## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 16 2019, 8:46 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Megan B. Quirk
Public Defender
Quirk & Hunter, P.C.
Muncie, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Robert J. Henke
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

In re the Termination of the Parent-Child Relationship of G.C. (Minor Child) and

J.M. (Mother),

*Appellant-Respondent,*

v.

Indiana Department of Child Services,

*Appellee-Petitioner.*

October 16, 2019

Court of Appeals Case No.
19A-JT-935

Appeal from the Delaware Circuit Court

The Honorable Kimberly Dowling, Judge

The Honorable Amanda Yonally, Magistrate

Trial Court Cause No.
18C02-1809-JT-87

**Mathias, Judge.**

[1] The Delaware Circuit Court terminated J.M.'s ("Mother") parental rights to her minor child, G.C. Mother appeals and argues that termination of her parental rights is not supported by clear and convincing evidence.

[2] We affirm.

## Facts and Procedural History

[3] G.C. was born in October 2012. On February 20, 2017, G.C. was removed from Mother's care due to Mother's arrest and incarceration. Mother was arrested for theft and leaving G.C. unattended in her vehicle in a Target parking lot. G.C. was placed in her maternal great grandmother's care.

[4] On the day Mother was arrested, Mother and G.C. were living in a hotel but were facing eviction that day. Mother has a history of substance abuse and has used illicit substances, including heroin, for several years. G.C. was adjudicated a child in need of services ("CHINS") on April 11, 2017.

[5] Mother was incarcerated between February 20, 2017 and late September 2017. She had also been incarcerated for short periods of time on five occasions in 2016. During those incarcerations, G.C.'s maternal grandmother and maternal great grandmother cared for her.

[6] Between December 2015 and January 2019, nine separate criminal cases were filed against Mother in four different Indiana counties. The criminal cases included a probation violation, violation of pre-trial release, multiple charges for theft and auto theft, a driving while suspended charge, and neglect of a

dependent. Four of the criminal cases were initiated during the CHINS proceedings. Mother was found guilty in four of the criminal cases and two were dismissed by plea agreement. Three of the cases were still pending in January 2019. Approximately thirteen warrants were issued for Mother's arrest based on her failure to appear at hearings relating to her criminal cases. However, she failed to appear at several of those hearings because she was incarcerated in another county.

[7] Mother also failed to appear for hearings in the CHINS proceedings held in February 2018 and August 2018. Mother was not incarcerated on the dates of those hearings. At the February 5, 2018 permanency hearing, the trial court ordered that Mother would not have visitation with G.C. until she contacted the Department of Child Services ("DCS") and engaged in services. At the August 6, 2018 periodic review hearing, DCS reported that Mother had not engaged in services or maintained contact with the department.

[8] Due to her incarceration and failure to participate in services, Mother has only had in person visitation with G.C. on one occasion since February 20, 2017, the date G.C. was removed from Mother's care. The visitation was unauthorized. However, Mother frequently spoke with G.C. on the phone throughout these proceedings.

[9] DCS made a referral for Mother to undergo a substance abuse assessment while she was incarcerated at the Delaware County Jail during the CHINS proceedings. After she was released from incarceration, Mother failed to seek

substance abuse treatment. The family case manager contacted Mother on numerous occasions requesting her address. Mother failed to respond or responded with multiple addresses. The family case manager unsuccessfully attempted to locate Mother at those addresses. Mother also had a standing appointment for drug screens each week, but Mother failed to appear for weekly drug screens. Mother occasionally submitted to drug screens throughout these proceedings, and six of those screens yielded positive results for illegal substances including THC, methamphetamine, cocaine, and fentanyl. Mother had four positive screens in Fall 2018.

[10] In January 2018, the family case manager made a second referral for Mother to undergo a substance abuse assessment. The referral expired after several months due to Mother's non-participation. Thereafter, Mother failed to maintain contact with her family case manager until August 2018 when Mother texted her case manager to inform him that she had housing. Her case manager requested her address, but Mother failed to respond for approximately two weeks. On September 5, 2018, Mother provided her address to her case manager. Since that date she has maintained fairly consistent communication with her case manager.

[11] On September 5, 2018, DCS filed a petition to terminate Mother's parental rights to G.C.[1] At the January 17, 2019 fact-finding hearing, Mother admitted

---

[1] Shortly thereafter, G.C.'s father filed a consent to her adoption by her maternal great grandmother.

that there was still an active felony warrant for her arrest in Marion County for theft charges, which will likely result in her incarceration. Tr. p. 52; Ex. Vol., Ex. 15 p. 52. But she also testified that she has had stable housing for over six months and stable employment for three months.

[12] The Court-Appointed Special Advocate ("CASA") believed that termination of Mother's parental rights was in G.C.'s best interest. The CASA noted Mother's failure to participate in services and failure to appear at hearings on dates when she was not incarcerated. The CASA expressed concern that Mother had not addressed her substance abuse issues. The CASA noted Mother's positive drug screens in December 2018, just a few weeks before the fact-finding hearing.

[13] On April 7, 2019, the trial court issued an order terminating Mother's parental rights to G.C. The court acknowledged the recent housing and employment improvements Mother had made. However, the court determined that "Mother's criminal history, substance abuse, failure to provide support, [historical] lack of adequate housing and employment are all factors that support termination of Mother's parental rights." Appellant's App. p. 25. Furthermore,

> There is a reasonable probability that the conditions that resulted in the child's removal and continued placement outside of the home will not be remedied. Throughout the duration of the CHINS case, Mother either failed to participate in or benefit from services ordered in the Dispositional Decree. Although Mother was intermittently incarcerated throughout the CHINS case, she did not avail herself of services during periods when she was not incarcerated that could have assisted her. Mother did not

maintain communication with DCS and has not demonstrated that she has addressed her substance abuse or pattern of criminal behavior. DCS has presented clear and convincing evidence upon which the court can reasonably conclude that Mother has not remedied the conditions that resulted in the child's removal.

*Id.* The trial court also concluded that termination of Mother's parental rights was in G.C.'s best interest. Mother now appeals.

# Discussion and Decision

Mother argues that DCS failed to present clear and convincing evidence sufficient to support the termination of her parental rights to G.C. The controlling statute provides that a petition to terminate parental rights must allege:

> (B) that one (1) of the following is true:
>
>> (i)   There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>>
>> (ii)  There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>>
>> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
>
> (C) that termination is in the best interests of the child; and
>
> (D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2).

[15] DCS must prove each element by clear and convincing evidence. Ind. Code § 31-37-14-2; *In re G.Y.*, 904 N.E.2d 1257, 1260 (Ind. 2009). Because Indiana Code section 4(b)(2)(B) is written in the disjunctive, the trial court is required to find that only one prong has been established by clear and convincing evidence. *In re A.K.*, 924 N.E.2d 212, 220 (Ind. Ct. App. 2010). Clear and convincing evidence need not establish that the continued custody of the parent is wholly inadequate for the child's very survival. *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 148 (Ind. 2005). It is instead sufficient to show by clear and convincing evidence that the child's emotional and physical development are put at risk by the parent's custody. *Id.* If the court finds the allegations in a petition are true, the court shall terminate the parent-child relationship. Ind. Code § 31-35-2-8(a).

[16] We have long had a highly deferential standard of review in cases involving the termination of parental rights. *In re D.B.*, 942 N.E.2d 867, 871 (Ind. Ct. App. 2011). We neither reweigh the evidence nor assess witness credibility, and we consider only the evidence and reasonable inferences favorable to the trial court's judgment. *Id.* In deference to the trial court's unique position to assess the evidence, we will set aside a judgment terminating a parent-child relationship only if it is clearly erroneous. *Id.* Clear error is that which leaves us with a definite and firm conviction that a mistake has been made. *J.M. v. Marion Cty. Office of Family & Children*, 802 N.E.2d 40, 44 (Ind. Ct. App. 2004), *trans. denied*.

[17] We have also often noted that the purpose of terminating parental rights is not to punish parents but to protect their children. *In re S.P.H.*, 806 N.E.2d 874, 880 (Ind. Ct. App. 2004). Although parental rights have a constitutional dimension, the law allows for their termination when clear and convincing evidence establishes that they are unable or unwilling to meet their responsibilities as parents. *Id.* Thus, parental interests must be subordinated to the children's interests in determining the proper disposition of a petition to terminate parental rights. *G.Y.*, 904 N.E.2d at 1259.

[18] Here, the trial court concluded that there was a reasonable probability that the conditions that resulted in G.C.'s removal from Mother's care, or the reasons for placement outside her home, would not be remedied. In its consideration of this statutory factor, the trial court must determine a parent's fitness to care for the child at the time of the termination hearing while also taking into consideration evidence of changed circumstances. *A.D.S. v. Ind. Dep't of Child Servs.*, 987 N.E.2d 1150, 1156–57 (Ind. Ct. App. 2013), *trans. denied*. The trial court may disregard efforts made only shortly before termination and give more weight to a parent's history of conduct prior to those efforts. *In re K.T.K.*, 989 N.E.2d 1225, 1234 (Ind. 2013).

[19] Here, all of Mother's efforts to improve her ability to care for G.C. were made in the four months leading up to the termination hearing. From September 2018 to January 2019, Mother maintained contact with her family case manager, found stable housing, and was employed for three months prior to the termination hearing.

However, Mother has not addressed her substance abuse issues and continued to test positive for illegal substances in the weeks leading up to the fact-finding hearing. Mother has an outstanding felony warrant out for her arrest. And Mother admitted that she will likely be incarcerated again as a result of those pending felony charges. Mother was incarcerated for nearly a year in 2017 during the CHINS proceedings. In 2016, Mother was incarcerated on five occasions. During the period that she was not incarcerated during the CHINS proceedings, Mother failed to maintain contact with her family case manager, failed to engage in services, and failed to appear at two CHINS hearings.[2]

Mother has not demonstrated that she is able to lead a law-abiding life or refrain from use of illegal substances. She not taken any steps to address her substance abuse. Moreover, Mother, by her own admission, will likely be incarcerated again due to the pending felony charges in Marion County. G.C. needs a safe, stable, and permanent environment in which to grow and thrive.

---

[2] Mother attempts to analogize her circumstances to those in *K.E. v. Indiana Department of Child Services*, 39 N.E.3d 641 (Ind. 2015). In *K.E.*, as a result of Father's incarceration, the trial court granted DCS's petition to terminate his parental rights. On appeal, our supreme court reiterated that "incarceration is an insufficient basis for terminating parental rights." *Id.* at 643 (citing *In re G.Y.*, 904 N.E.2d at 1264–66). And the court reversed the trial court's order terminating Father's parental rights because "Father made extensive efforts to better himself by learning parenting skills, addressing his problems with substance abuse, and establishing a bond with both of his children." *Id.* at 643-44. In addition, the CASA recommended delaying termination of Father's parental rights.

The only similarity between *K.E.* and this instant case is the bond that Mother has with G.C. Unlike the Father in *K.E.*, Mother failed to participate in services even when she was not incarcerated, failed to maintain contact with her family case manager, failed to address her substance abuse problems, and failed to attend hearings in the CHINS proceedings. Mother complains that she was not offered services such as a mental health assessment or counseling, but those services were not made available because she did not cooperate with DCS.

Mother has not demonstrated that she is able to provide G.C. with a stable and secure home. For all of these reasons, we conclude that the trial court's finding that there was a reasonable probability that the conditions that resulted in G.C.'s removal from Mother's care, or the reasons for placement outside her home, would not be remedied is supported by clear and convincing evidence.[3]

[22] We therefore affirm the trial court's order terminating Mother's parental rights to G.C.

[23] Affirmed.

Robb, J., and Pyle, J., concur.

---

[3] Mother also argues that DCS failed to prove all of the statutory factors listed in Indiana Code section 31-35-2-4(b)(2)(B)(ii) and (iii). But the trial court is required to find that only one prong of that subsection has been established by clear and convincing evidence. *In re A.K.*, 924 N.E.2d at 220. We also note that Mother does not challenge the trial court's conclusion that termination of her parental rights was in G.C.'s best interest.